**FELLABAUM v. SWIFT & CO.**

No. 4683.

District Court, N. D. Ohio, W. D.
March 11, 1944.

Dan H. McCullough and Eugene Howard, both of Toledo, Ohio, for plaintiff.

Fraser, Shumaker, Kendrick & Winn, of Toledo, Ohio (Ross W. Shumaker, of Toledo, Ohio, of counsel), for defendant.

KLOEB, District Judge.

The defendant, Swift and Company, maintains a branch office and warehouse in Toledo, Ohio, wherein it receives shipments of meat and some canned goods from the States of Illinois, Wisconsin, Nebraska, Missouri, New York and Minnesota, from plants owned and operated by the defendant company in those various States. These meats and canned goods, upon arrival in Toledo, are stored in the warehouse, where provisions are had for refrigeration and much of it is processed at this location by way of manufacturing the meat into sausage, smoked meats, etc. As to such part of its activities wherein the defendant company shipped to and received, at its Toledo plant, the products of its plants in the States named, there can be no doubt but that it was engaged in "commerce".

It appears from the record that none of the products shipped from out of State to the Toledo plant were shipped on order or under contract from retailers supplied by the Toledo branch. Distribution of the meats and products stored in the Toledo plant was made upon local orders received from day to day at the office of the plant from its retail customers, and delivery was made by the trucks of the defendant company from its Toledo plant only to customers located within the State of Ohio.

354

This comprised a territory within and adjacent to the City of Toledo.

A portion of the business done by the Toledo plant was through orders received from the Atlantic and Pacific Tea Company and from the Kroger Grocery and Baking Company, two large chain store organizations. Plaintiff testified that 50% of the business of. the Toledo plant was on order from these two companies. On the other hand, defendant, through its records, offered evidence, pages 95 and 96 of the record, to the effect that, from August, 1939, to June, 1941, the time at which plaintiff severed his connections with the defendant company, 6.64% of the total volume of business of the Toledo branch of the defendant company went to the Kroger Company and 15.59% went to the Atlantic and Pacific Tea Company. The record substantiates the fact that 90% of the orders of the A. and P. Company were delivered directly to its individual stores within the State of Ohio by the defendant's trucks operating out of its Toledo plant. Approximately 10% of the A. and P. business was delivered by defendant's trucks to the Brown Avenue warehouse of the A. and P. Company in the City of Toledo. Some of this latter delivery was marked in such a manner as to indicate that its ultimate destination was to individual stores of the A. and P. Company located outside the State of Ohio. However, delivery of these particular orders was made from the Brown Avenue warehouse of the A. and P. Company in the trucks of this company. A portion of this 10% delivered to the Brown Avenue warehouse was not destined for delivery to the stores of the A. and P. Company outside the State of Ohio.

During the period in question, October 24, 1938, to June 7, 1941, plaintiff was employed as shipping and receiving clerk in the Toledo branch plant. It was the duty of the receiving clerk to receive, check and supervise the unloading of meats that had just arrived from defendant's plants located outside the State of Ohio. In the carrying out of this business plaintiff was supplied with an assistant receiving clerk, a Mr. Veres, who superintended substantially all of this character of work. Plaintiff took over, it appears, only when Mr. Veres was off duty for lunch or otherwise, and when a shipment of meats was in process of being unloaded during the absence of Mr. Veres. From plaintiff's own testimony, page 41 of his deposition, lines 15, 16, 17 and 18, it appears that, in some weeks, he spent as much as ten hours on this work as receiving clerk, but this kind of labor was not consistently done week after week. From defendant's testimony, at page 52 of the record, it is contended that the plaintiff was employed but four or five hours per week on the average in his business as receiving clerk.

Plaintiff was employed an average of fifty-four hours per week during the period in question (Interrogatory No. 4). The record is conclusive that his work as shipping clerk in supervising the distribution of meats from the Toledo branch plant, on order from its local customers, and in defendant's trucks, comprised the substantial part of his labors.

I am convinced, from the record, that plaintiff has failed to establish by a preponderance of the evidence his contention that a substantial part of his duties comprised "commerce" within the terms and meaning of the Act, 29 U.S.C.A. § 201 et seq.

Plaintiff's position appears to be that the defendant's Toledo branch is merely a device for the more efficient canalizing of goods in a "current of commerce", and that all of his activities were merely a part of the "stream of commerce" from out of State sources to the retail stores served by defendant's branches.

■ The applicability of the Act to an employee depends, however, on the character of his own work, of which a substantial part must be in commerce or in the production of goods for commerce. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Walling v. Goldblatt Bros., 7 Cir., 128 F.2d 778.

■ The "stream of commerce" test has been rejected by the great weight of authority, and receives support in only two cases, both District Court cases decided in 1941. See Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172; Rauhoff v. Henry Gramling & Co., D.C., 42 F.Supp. 754; Walling v. Goldblatt Bros., op. cit.; Walling v. Jacksonville Paper Co., op. cit.; Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202.

It is not ·sufficient, in order for an employee to come under the Act, that his employer is engaged in commerce. Baggett v. Henry Fischer Packing Co., D.C., 37 F. Supp. 670.

■ The work that plaintiff performed as shipping clerk was not work in "commerce".

In the case of Walling v. Sanders, et al., 6 Cir., 136 F.2d 78, at page 80, in the opinion of Judge Simons, I find the following: "Nevertheless, upon a careful consideration of these cases we conclude that the decision below, insofar as it holds the local beer distribution not part of the interstate movement of the commodity from the out-state breweries, is essentially sound. The distribution is made from stock in the warehouse, not in response to prior orders filled by special consignments from the breweries, nor from stock especially maintained for particular customers."

See, also, Swift & Co. v. Wilkerson, 5 Cir., 124 F.2d 176, a case wherein the plaintiff's duties as a cashier in a plant, similar to the one in question in this case, were found to be almost wholly confined to local distribution.

■ These cases conform to the great weight of authority holding that intrastate distribution of stock from a warehouse not on prior order or contract is not work in commerce. See Walling v. Jacksonville Paper Co., op. cit.; Higgins v. Carr Bros., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468; Walling v. Goldblatt Bros., op. cit.; Allesandro v. C. F. Smith Co., 6 Cir., 136 F.2d 75; Walling v. Mutual Wholesale Food & Supply Co., D.C., 46 F.Supp. 939.

Assuming, for the sake of argument, that plaintiff's work in the deliveries to the A. and P. warehouse were in commerce, because of the fact that some of such deliveries were for out of State stores, the fact remains that the amount of this work was negligible. The total percentage of such deliveries was only approximately 1.6% of the defendant's total distribution, and not even all of this percentage was destined for out of State stores.

I am of the opinion that plaintiff was not engaged in "commerce" as regards a very substantial part of his duties and, as to those duties in "commerce", they are so inconsequential and so indefinitely fixed by the testimony of the plaintiff as to deserve no consideration.

The defendant, in addition to its contention that the plaintiff was not engaged in "commerce", relies on its defense that the plaintiff's duties would classify him as an "executive" within the meaning of the Act, and the regulation promulgated by the Administrator under authority of the Act.

Sec. 213 of 29 U.S.C.A. the Fair Labor Standards Act, provides, in part, as follows: "(a) The provisions of sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delineated by regulations of the Administrator.)"

The regulation of the Administrator defining the word "executive" reads as follows:

"Sec. 541.1. Executive.—The term 'employee employed in a bona fide executive * * * capacity' in section 13(a) (1) of the Act shall mean any employee

"(A) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(B) who customarily and regularly directs the work of other employees therein, and

"(C) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(D) who customarily and regularly exercised discretionary powers, and

"(E) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities), and

"(F) whose hours of work of the same nature as that performed by nonexempt employees do not exceed twenty per cent of the number of hours worked in the workweek by the nonexempt employees under his direction; provided that this subsection (F) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment".

■ This Court has heretofore proceeded on the theory that the Fair Labor Standards Act is remedial in its nature and should be liberally construed, and the exceptions to the coverage of the Act should be narrowly construed.

■ The regulation of the Administrator defining "executive" should carry great weight with the Court, even though the Court feels that the regulation too narrowly defines the word "executive" as used in the Act.

356

From the record in this case, I am convinced that the plaintiff, in his employment, came within the provisions of paragraphs (A), (B), (E) and (F) of the regulation, but I am not convinced that his duties were such as to exempt him from the provisions of the Act under paragraphs (C) and (D) of the regulation. Clearly, he did not have authority to hire or fire other employees, and I am not convinced that his suggestions and recommendations as to the hiring or firing, and as to the advancement and promotion or any other change of status of other employees, was given particular weight during the time that he served as shipping clerk. Further, I am not convinced that the discretionary powers that were entrusted to the plaintiff, and that were customarily and regularly exercised by him, were of such a nature as to bring him within the intent of the Administrator when he promulgated paragraph (D) of the regulations.

For the reason that the plaintiff has failed to maintain the burden of proof cast upon him to establish, by a preponderance of the evidence, that he was engaged in "commerce" during the period in question, and while an employee of the defendant company, I find for the defendant and order the complaint dismissed.

Defendant may file its findings of fact and conclusions of law, drawn in accordance with this memorandum, within ten (10) days, and plaintiff may have five (5) days thereafter to file his exceptions and suggested additions.