**Russell J. HARRISON**

v.

**PRESTON TRUCKING COMPANY, Incorporated.**

**Civ. A. No. 12533.**

United States District Court
D. Maryland.

Jan. 23, 1962.

H. Russell Smouse, Aaron Margolis, Carroll F. Fitzsimmons, and Edward Pierson, Baltimore, Md., for plaintiff.

Jacob Blum, Baltimore, Md., for defendant.

WINTER, District Judge.

Plaintiff, formerly employed by the defendant as the day dispatcher at its Baltimore terminal, sues to recover unpaid

overtime compensation, and a like amount as liquidated damages, together with interest, attorneys' fees and costs, under the provisions of the Fair Labor Standards Act, as amended, 29 U.S.C.A. § 201 et seq.

The defendant, an interstate trucking company, was engaged in interstate commerce. For the period January 1, 1958 to December 30, 1959 the plaintiff was paid $249.16 semi-monthly, or $118.84 weekly. Beginning May 1, 1959, to and including October 31, 1959, the date on which plaintiff's employment was terminated, he was paid $260.00 semi-monthly, or $120.00 per week. During these entire periods he worked daily, Monday through Friday, from 7:30 A.M. to 5:30 P.M., without any allowance for lunch, a 9½ hour day and 47½ hour week. Every fourth Saturday the plaintiff worked an additional 5½ hours and, when this time is added to the basic weekly average, the plaintiff worked an average of 48¾ hours per week. He was paid no additional compensation for overtime.

The parties have stipulated that if the Court finds for the plaintiff, counsel will agree as to the amount of the judgment to be entered.

By § 13 of the Act, 29 U.S.C.A. § 213 (a), the minimum wage requirements are made inapplicable, *inter alia*, to " * * * any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator) * * *." [1] Defendant contends that the plaintiff is employed in a bona fide administrative capacity, hence the Act does not apply and judgment should be entered for the defendant.

The regulations defining and delimiting what is meant by an "employee em-

ployed in a bona fide * * * administrative * * * capacity," and the tests prescribed, provide that such an employee is one (29 C.F.R., Cum.Supp.1961, § 541.200):

"(a) Whose primary duty consists of the performance of office or non-manual field work directly related to management policies or general business operations of his employer or his employer's customers; and

"(b) Who customarily and regularly exercises discretion and independent judgment; and

"(c) (1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined in this subpart); or

"(2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; or

"(3) Who executes under only general supervision special assignments and tasks; and

"(4) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and

"(e) Who is compensated for his services on a salary or fee basis at a rate of not less than $95 per week (or $70 per week if employed in Puerto Rico or the Virgin Islands) exclusive of board, lodging, or other facilities;

"*Provided*, That an employee who is compensated on a salary or fee basis at a rate of not less than $125 per week (exclusive of board, lodging, or other facilities), and whose

---

1. § 13 was amended by the Fair Labor Standards Amendments of 1961 Public Law 87-30, 75 Stat. 65. As far as this case is concerned the amendments are immaterial except to codify Reorganiza-tion Plan No. 6, 15 F.R. 3174, 64 Stat. 1263, 5 U.S.C.A. following section 611 which transferred the functions of the Administrator to the Secretary of Labor.

primary duty consists of the performance of office or nonmanual field work directly related to management policies or general business operations of his employer or his employer's customers, which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all of the requirements of this section."

The parties agree that the plaintiff satisfies ¶¶ (a), (c) (1) and (e) of the regulations, so that the questions submitted for determination are whether the plaintiff "customarily and regularly exercises discretion and independent judgment" within the meaning of ¶ (b), and whether the plaintiff within the meaning of ¶ (d) "does not devote more than 20 percent of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work * * *" otherwise exempt.

Defendant has freight terminals in a number of cities, including Baltimore, and plaintiff was employed as a dispatcher at the Baltimore terminal during the period in question to dispatch local freight, that is to say, freight originating in or destined for the Baltimore Metropolitan Area. When he reported for work each morning, another dispatcher was also on duty and both dispatchers worked together until 11:00 A.M. From 11:00 A.M. until 3:30 in the afternoon, plaintiff was the sole dispatcher on duty, but, at the latter hour, he was joined by the night dispatcher, who remained on duty after plaintiff completed his work day. Briefly stated, the function of the dispatcher was to supervise eight to ten handlers of freight who worked on the platform where the dispatcher's office was located, and to supervise the assignment, the departure time, and pickup duties of twenty truck drivers. His duties include assignment of freight to various trucks and drivers, receipt of pickup calls, selection of local routes, and assignment of drivers to pickup calls after the previously assigned deliveries were completed.

■ There is no need, at this late date, for extensive discussion of the remedial nature of the Fair Labor Standards Act, the liberal construction to be afforded it, and the strict construction to be afforded any claimed exemption from the Act. Typical of the authorities establishing these basic rules are Walling v. General Industries Co., 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947); Aulen v. Triumph Explosive, 58 F.Supp. 4 (D.C.Md., 1944, Chesnut, J.); Fellabaum v. Swift & Co., 54 F.Supp. 353 (D.C.N.D.Ohio, 1944).

■ The many adjudicated cases also establish that each case presents primarily a question largely factual in nature. With attention to these basic principles and consideration also that in a case like the instant one, the employee tends to minimize his discretionary duties and the employer to overemphasize them. I conclude that from the evidence the plaintiff customarily and regularly exercised discretion and independent judgment to the degree that satisfies ¶ (b) of the regulations.

Plaintiff during his work day, alone or in conjunction with the other dispatcher, supervised eight to ten handlers of freight and twenty truck drivers—one of the latter of whom testified that the plaintiff was his "boss." Plaintiff directed the drivers to group the freight and selected the precise time of departure for each driver. Plaintiff directed what freight was to be loaded in what truck. He could recommend schedule changes, and could recommend hiring or leasing of additional drivers and trucks. By his own testimony, the plaintiff's recommendations were accepted sometimes. When a determination to hire additional drivers was made, their selection was primarily plaintiff's prerogative. His immediate supervisor, the terminal manager, said that if he or the other supervisor, the superintendent of terminals, were absent, the plaintiff could make such decisions on his own motion, but, even if present, the terminal manager gave

great weight to the plaintiff's recommendations.

The plaintiff recommended firing and disciplinary action of drivers. The shop steward testified that the plaintiff disciplined the men under his supervision, and the terminal manager testified that the plaintiff, on his own motion, could terminate the services of any driver during the first thirty days, until he became a regular employee entitled to security under the terms of the union contract.

Plaintiff admits that he discussed grievances with the shop steward, although the discussion was apparently limited to those grievances arising out of the plaintiff's activities.

The plaintiff negotiated truck leases and, within a range of permissible prices and weight and load capacity of vehicles to be leased, he could enter into binding commitments. He assigned freight and freight bills to drivers, and he assigned drivers to pick up new shipments of freight on the basis of orders received while drivers were making deliveries. Plaintiff played a part in the determination of whether vehicles were overloaded; he received reports of accidents and, where necessary, provided substitute equipment. The selection of freight routes within the Baltimore Metropolitan Area was vested solely in him for freight dispatched while he was on duty.

The plaintiff assigned the platform handlers to load particular trailers, and he selected the drivers to drive the trailers. He supervised the mechanical department of a defendant's business in regard to what equipment was to be repaired and the order in which such work should be undertaken and vehicles returned to service.

Although disputed by plaintiff, the terminal manager testified that, in his absence and that of the supervisor of terminals (a not unlikely event since the terminal manager worked some hours when the plaintiff was not on duty and the supervisor of terminals performed his function for terminals other than the Baltimore terminal), the plaintiff was in complete charge of the operating and of the business.

Although there is no magic in the job classification of the plaintiff as a dispatcher,[2] persons having that classification and *performing duties similar to those performed by the plaintiff* have been held regularly to exercise discretion and independent judgment within the meaning of the regulation, Mitchell v. Branch Motor Express Co., 168 F.Supp. 72 (D.C.E.D.Pa., 1958); Mitchell v. Baggett Transportation Co., 12 W.H. Cases 369 (D.C.Ala., 1954) (where a dispatcher was held exempt as an "executive" employee, a classification having in most part more stringent tests than those prescribed for an "administrative" employee; McComb v. New York & New Brunswick Auto Exp. Co., 95 F.Supp. 636 (D.C.N.J.1950). The contrary holding in Walling v. Norris, 155 F.2d 832 (6th Cir., 1946), rev'd on other grds. 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947), that the dispatchers there considered were not exempt employees is not inconsistent with the conclusion herein nor does it require a different result, because the dispatchers in that case were compensated on an hourly, and not a salary, basis, the latter being one of the essential conjunctive requirements for exemption.

There remains the question as to whether the plaintiff devoted more than 20 percent of his hours in the workweek to activities "which are not directly and closely related to the performance of the work" described in the paragraphs of the regulations under which plaintiff qualifies. Plaintiff claims that certain of his duties, which will be briefly described, were not of that nature. These duties

2. 29 C.F.R. § 541.201(b) where it is said in part: "Job titles insufficient as yardsticks. * * * A title alone is of little or no assistance in determining the true importance of an employee to the employer or his exempt or nonexempt status under the regulations * * *. Titles can be had cheaply and are of no determinative value. * * *"

consist of the receipt of phone calls, the stripping of freight bills, the typing of extra copies of freight bills and the preparation or completion of freight manifests and the handling of in bond freight. Plaintiff estimates that these duties occupied an average of four hours per day, in addition to what he termed his strictly dispatching duties, of which approximately two hours were spent in telephoning.

The telephone calls received by plaintiff were in the nature of inquiries by shippers in regard to the tracing of freight, inquiries from drivers wanting work, reports from drivers en route and requests for instructions as to freight pickups. The testimony showed that in the early morning hours, before the office switchboard was open, plaintiff received all such calls directly, but at other times during the day certain freight pickup orders were taken directly by the telephone operator and transmitted to the plaintiff in written form, although there was testimony that the telephone operator was limited as to the size and weight of freight orders which she could accept, so that, even during the hours that she received telephone orders, certain of the calls would be routed directly to plaintiff.

Plaintiff's duties with regard to stripping freight bills consisted of separating the several copies, furnishing a set to the driver who would deliver the freight described in the bill, and transmitting the remaining sets to other departments of the defendant's enterprise. At times plaintiff received clerical help from one of the clerks in the office in the performance of this function. Plaintiff estimated that he might spend as much as thirty minutes per day in this activity.

Certain customers of the defendant insisted upon a greater number of copies of freight bills than were customarily furnished, and another of plaintiff's "extra" duties was the typing of extra copies of bills. Also, one customer of the defendant insisted upon a freight manifest, and freight manifests were required for all shipments destined for the Washington terminal. A freight manifest is a recapitulation of freight bills covering the several items of freight included in one overall shipment. Plaintiff would prepare the manifest to defendant's customer and also would complete the manifest for shipments to Washington—the latter generally originating at another terminal and the manifest being partially completed at the time that the shipment reached the Baltimore terminal. An average of three or four manifests were required to be prepared each day, consuming 45 minutes to 1 hour of time.

In bond freight was freight consisting of imported merchandise. Plaintiff's duties in regard thereto would be to communicate with a customs inspector and make an appointment for him to examine the imported merchandise. Plaintiff did not remain with the inspector during the examination, but after clearance was obtained plaintiff would communicate with the shipper, ascertain from him the consignees and prepare a freight bill for each consignee and dispatch the freight in accordance with his usual function. The plaintiff estimated that the total handling of in bond freight would consume one, two or, sometimes, even three hours per day.

What are activities "directly and closely related" to exempt work is the subject of the Administrator's regulations and has received judicial construction. The Regulations, 29 C.F.R., Cum. Supp.1961, § 541.200, describe a number of examples to clarify the differences between work which is directly and closely related, and work which is unrelated or only remotely related. The examples seem to make clear that the test is not whether the work is essential to the proper performance of the more important work, but whether it is related. Thus, notemaking, by a consultant when standing alone or separated from his primary duties, would be routine and, hence, not directly and closely related within the meaning of the regulations, but at the same time such work is necessary to the proper performance of his

primary duties and thus is considered to be "directly and closely related" when performed by the consultant.

Judge Chesnut, in the Triumph case, supra, treated layout and detail work on designs as directly and closely related to the primary work of certain machine designers who were otherwise exempt from coverage by the Act and, in reaching such conclusion, Judge Chesnut recognized that less qualified employees were perfectly capable of performing such work, but the work was an essential and necessary step in the preparation of a machine design and, hence, was closely and directly related. More specifically, in the case of a dispatcher of an interstate trucker in the New York & New Brunswick Auto Exp. Co. case, supra, the two hours of one dispatcher's work day spent in matching weigh bills to manifests was treated as directly and closely related to the general duties of dispatching, which were held to be exempt from coverage.

■ Since the plaintiff's duties involved the exercise of discretion in providing transportation equipment, assignment of drivers, tracing of freight, selection of extra drivers determined to be needed by plaintiff, or at least recommended to be employed by plaintiff, I conclude that the receipt of telephone calls by the plaintiff in regard to such subjects was directly and closely related to his primary duties. The mere fact that at times some of these functions might be performed by clerical employees is, in the light of the regulations and Judge Chesnut's opinion, immaterial, notwithstanding plaintiff's argument to the contrary. The stripping of freight

bills seems to me to fall into the same category, since they provided the documentary evidence of the assignments and exercise of discretion and judgment which plaintiff was called upon to make. While certain aspects of the handling of in bond freight, such as the arrangement of appointments with customs inspectors, might not fall into this category, the plaintiff's testimony is that little time was spent in this phase of handling in bond freight and the majority of the time was spent in contacting the shipper, ascertaining the consignees and preparing freight bills, activities which seem clearly to be directly and closely related to plaintiff's main duties. It is equally clear that the typing of extra copies of bills was not directly and closely related but, since the amount of time consumed in this activity was *de minimis*, although no precise estimate was made, my overall conclusion is that the 20 percent limitation contained in ¶ (d) of the regulations was fully satisfied.

The only authority contrary to this conclusion is the Branch Motor Exp. Co. case, supra, in which there is a dictum that the taking of telephone orders by a dispatcher was not directly and closely related to his main functions, although the amount of time involved was so slight that the dispatcher was held exempt from coverage under the Act.[3] When the basis for the dictum is examined, the latter fails to persuade. There is a distinction between what is directly and closely related to the duties of a traffic manager described in illustration (e), and what is directly and closely related to the duties of a dispatcher whose functions included the planning of actual shipments

---

3. As authority, the District Court cited illustration (e) of 29 C.F.R., Cum.Supp. 1961, § 541.208, which reads as follows: "(e) The following additional examples may also be of value in applying these principles. A traffic manager is employed to handle the company's transportation problems. The exempt work performed by such an employee would include planning the most economical and quickest routes for shipping merchandise to and from the plant, contracting for common-carrier and other transportation facilities, negotiating with carriers for adjustments for damages to merchandise in transit and making the necessary rearrangements resulting from delays, damages or irregularities in transit. This employee may also spend part of his time taking 'city orders' (for local deliveries) over the telephone. The order-taking is a routine function not 'directly and closely related' to the exempt work and must be considered nonexempt."

and pickups of specific items of freight for his employer's customers.

Accordingly, the Court will enter judgment for the defendant.

Should counsel desire to request additional findings of fact, they may make application therefor within ten (10) days from the date of filing of this opinion.