Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

STRICKLAND TRANSPORTATION COMPANY, Inc., Defendant.

No. LR 61 C 118.

United States District Court
E. D. Arkansas, W. D.
March 13, 1962.

418

T. Hagan Allin, Dallas, Tex., for plaintiff.

Louis Tarlowski, Little Rock, Ark., Ralph W. Currie, Dallas, Tex., for defendant.

YOUNG, District Judge.

Plaintiff brings this action to enjoin the defendant from alleged violations of the Fair Labor Standards Act of 1938 (52 Stat. 1060, as amended; 29 U.S.C.A. § 201 et seq.). The specific acts complained of are that the defendant is alleged to have employed certain persons in its Little Rock terminal in the capacity of "dispatchers" without compensating them for their employment in excess of forty hours per week at one and one-half times the regular rate of compensation. The defense is that the "dispatchers" are exempt from the Fair Labor Standards Act under § 13 thereof (29 U.S.C.A. § 213) which provides as follows:

"The provisions of sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive (or), administrative, * * * capacity * * * (as such terms are defined and delimited by regulations of the Administrator)."

■ The applicable regulations are as follows:

Section 541.1—Executive.

"The term 'employee employed in a bona fide executive * * * capacity' in section 13(a) (1) of the act shall mean any employee:

"(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

"(b) Who customarily and regularly directs the work of two or more other employees therein; and

"(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

"(d) Who customarily and regularly exercises discretionary powers; and

"(e) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not directly and closely related to

the performance of the work described in paragraphs (a) through (d) of this section: *Provided,* That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment * * * or who owns at least a 20-percent interest in the enterprise in which he is employed; and

"(f) Who is compensated for his services on a salary basis at a rate of not less than $80 per week (or $55 per week if employed in Puerto Rico or the Virgin Islands) exclusive of board, lodging, or other facilities: * * *." 29 C.F.R. § 541.1, 29 U.S.C.A. Appendix.

Section 541.99—Introductory Statement.

"(e) Finally, it is a well-established principle that the burden of proving exemption under 13(a) (1), as well as any other exemption provision of the Fair Labor Standards Act, rests on the employer." 29 C.F. R. § 541.99.

It is to be noted that the six requirements set out above are in the conjunctive, and all must be present in order to invoke the exemption. Also, not only is the burden on the employer to prove the exemption, but the exemption provisions are to be narrowly construed against the employer seeking to assert them. Mitchell v. Kentucky Finance Company, 359 U.S. 290, 295, 79 S.Ct. 756, 3 L.Ed.2d 815; Phillips Co. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095.

■ In determining whether a particular employee comes under the executive exemption, the primary question is whether his duties, responsibilities and salary meet all the requirements of the pertinent section of the regulations. The employee's title or class specification is of no significance. 29 C.F.R. § 541.99(c).

We are here essentially concerned with three employees: Kumpuris, Hatcher and Patton. There appear to be two other dispatchers, but one of them is just "breaking in" and the other spends part of his time at other work. Kumpuris is the day man and seems to carry the heavier burden of work and responsibility. If he is exempt, it does not necessarily follow that the others are also, but if he is not exempt, then the others are certainly not. Kumpuris works from 6 a. m. to 6 p. m. The first thing he does when he comes to work is make a check list of the equipment he has available for hauls and gather information concerning the runs that have been made the previous night. Soon afterwards he is called by "central dispatch" which is a division or department of the employer located in Dallas, Texas. This is usually a conference call with other terminals of the employer's business on the line. Kumpuris gives "central dispatch" certain information, and they "in most cases" tell him what freight to move. From the discussion with "central dispatch" Kumpuris prepares a line-up of the hauls to be made. He next calls the drivers that are needed for the immediate runs on the telephone, and he testified that he spent approximately 30% of his time on this procedure prior to the institution of "sleeper runs" by the employer. He did not testify as to what difference has been made by the installation of "sleeper runs," but there is other testimony to the effect that it now takes longer to call all the drivers, and this is the logical conclusion since there are now two drivers per run and there are no pre-scheduled runs now as there were before. Telephoning drivers is done on a "first-in first-out" basis, except where the driver has noted on a blackboard that he does not want to be called out for some reason or other. There are also "bid runs" for which the drivers are called by seniority.

Kumpuris occasionally hands out sheets and pillows to the drivers and occasionally picks up the dirty ones. He keeps an inventory of the sheets. He checks with the dock foreman twice a day to see what trailers he is loading and the destined points to which they will be going, and this information is given to "central dispatch" on one of the several calls that

they make to Kumpuris during the day. The conversations with "central dispatch" take up approximately three to three and one-half hours of his time per day.

It is my opinion that the record in this case clearly reflects that the employer has not complied with the burden of proof requiring it to show that these employees come within the exemption provided for executive employees. The record is particularly weak concerning paragraphs (d) and (e) of regulation 541.1, which are the requirements that the employee customarily and regularly exercise discretionary power and devote not more than 20% of his time to activities which are not directly and closely related to the other work described in paragraphs (a) through (d) of the regulation.

There is evidence that the dispatchers have discretionary powers and use discretion in regard to directing drivers over alternate routes in bad weather and in directing drivers as to what procedure to take when they have been involved in accidents, e. g., to stay with the equipment and wait for other trailers to pick up the freight or to bring the equipment on in. There is other testimony in the form of broad statements concerning discretionary powers of the dispatchers, but the most persuasive testimony is that of the dispatchers themselves as to what specific duties they actually carry out.

The telephoning of drivers can hardly be anything but routine work that involves no discretion. There are set rules by which the drivers are called, and the dispatchers have no authority to compel a driver to take a run until the last available driver is reached. This takes up 30% and probably more of the dispatchers' time. The discussions with "central dispatch" are rather hard to classify from the testimony, but it is my impression that the dispatchers report the general situation existing at the station and "central dispatch" then generally instructs the dispatchers as to what freight is to move and in what order. "Central dispatch" is definitely dominant in these conversations and the Little Rock dispatchers apparently only report general information and receive general instructions. Their involvement with sheets and pillows is routine as well as the two yard checks they make each day. There is other testimony that the dispatchers check trailers for flats and to see if the seal is on and occasionally check the heaters or coolers on trailers.

A recent case holding dispatchers exempt from the Act is Mitchell v. Branch Motor Express Company, E.D.Pa., 168 F. Supp. 72. In Mitchell the following facts were present which are not present here: The dispatchers directed the drivers (local) as to the order, method and occasionally the routing to be used in making pick-ups and deliveries; directed the loading of long-distance vehicles in order to insure safety; directed the maintenance readiness of the vehicles; directed the platform supervisors and their men in doing their work of loading, unloading and storing; disciplined, suspended and recommended drivers for discharge; employed extra drivers; determined the number and size of vehicles used; and straightened out the complaints of drivers. In the case at hand, the dock foreman has complete charge of the loading of freight and all of the local drivers, and the dispatcher has no authority in regard to either of these phases of the work.

Another case holding dispatchers exempt is McComb v. New York & New Brunswick Auto Exp. Co., D.C.N.J., 95 F.Supp. 636. In McComb the following facts were present which we do not have in the case before us: The dispatchers directly controlled the platform foremen, assistant foremen and 24 platform loaders; controlled the mechanical force; at night controlled the entire operation under the authority of no one; hired and discharged employees; had authority to delay the delivery of cargoes; and spent time on phone answering complaints of customers. Also, it is to be noted that in the McComb case all the dispatchers worked for the employer for a long period of time and came up through the

various laboring ranks of the organization. In the case at hand, all of the dispatchers were hired without previous experience and immediately assigned to the job of dispatcher.

In summary, the dispatchers in the instant case do not have the same authority, duties and discretionary powers as the dispatchers held exempt from the Act in the reported cases. Further, it is my opinion that the dispatchers in this case do not comply with paragraphs (d) and (e) of Section 541.1 of the Regulations in that they do not customarily and regularly exercise discretionary powers and they do devote more than 20% of their workweek hours to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of the section.

Having decided the question of coverage, I now turn to the matter of the requested injunction. This is a discretionary matter in which the court has broad powers. See Annotations, Note 3, 29 U.S.C.A. § 217. An injunction does not issue as a matter of course upon the finding of coverage. Mitchell v. Hodges Contracting Co., 5 Cir., 238 F.2d 380. There are some cases in which an injunction is clearly indicated, and the denial of the request for an injunction is an abuse of the court's broad discretionary powers. Goldberg v. Kickapoo Prairie Broadcasting Co., 8 Cir., 288 F.2d 778; Mitchell v. Jax Beer Distributors of Beaumont, Inc., 5 Cir., 290 F.2d 24. In Kickapoo there was an intentional falsification of time records and a destruction of time records. In Jax there was a question of coverage of helpers on beer delivery trucks. The question had already been decided adversely to the employer several times, and the employer, through advice of counsel, knew of the adverse decisions. The lower courts denied injunctions and on appeal both decisions were held to be abuses of discretion.

The case at hand falls into a much larger group of cases, and that is where there are no such guideposts as intentional acts designed to evade coverage or prior decisions that make it clear that the contest of coverage was not in good faith. In the case at hand we are dealing with employees designated as dispatchers. Employees with this title have been found exempt in every reported decision of the courts as far as I have been able to determine. Therefore, no lack of good faith was shown by the contest of coverage. In this situation, employers should be allowed to litigate the question without fear of being penalized for doing so.

It is often argued that an injunction does no harm to the employer in that it only requires him to do what the law already imposes upon him. This argument was answered by Judge Lemley in Mitchell v. Helena Wholesale, Inc., E.D.Ark., 163 F.Supp. 101, 105, where he said:

"While the plaintiff insists that the injunction here does not require the defendant to do anything that it has a legal right not to do, or to refrain from exercising any legal right that it possesses, we feel that such statement is an over simplification. It is, of course, true that all employers subject to the Act are required to comply with its terms, still it is unrealistic to say that an enjoined employer is in the same situation as one who is not enjoined. Not only does the former labor under the stigma and embarrassment of having been found to be in violation of the law and subject to injunction, which stigma and embarrassment may have injurious effects in and of themselves, but also he is subject to contempt proceedings, conviction in which entails more serious stigma and more severe consequences than the injunction itself. And out of fear of such proceedings the enjoined employer may well feel impelled to sacrifice his own views and interests to those of the Government, if he can ever discover what they are, and pending that discovery he may well be forced, out of an abundance of caution, to resolve all questions against his own inter-

ests, as the defendant did in this case and as employers so situated generally do."

On the other hand, the Department of Labor has incurred considerable expense and has done a great deal of work in prosecuting this action, and this court has found that the plaintiff is entitled to prevail. Plaintiff now asks for the fruits of victory—complete relief, something the successful litigant is ordinarily entitled to. The injunctive relief is the most successful enforcement procedure available to the Department, and it is the duty of the courts to grant this relief where applicable.

"* * * section 17 of the Act contemplates that the district courts shall exercise the judicial power in aid of the administrative power. * * * The Bureau can not carry the burden alone. Nor is it given powers adequate to enforce the will of Congress expressed in the Act." Lenroot v. Interstate Bakeries Corporation, 8 Cir., 146 F.2d 325, 327.

"Even a cursory examination of these provisions (the provisions for enforcement) shows that the injunction is the only effective device available to the Secretary when coverage is in doubt and he wishes to establish the availability of the Act to employees not theretofore afforded its protections." Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 214, 79 S.Ct. 260, 265, 3 L.Ed. 2d 243.

As was pointed out in the case of Mitchell v. Stewart Brothers Construction Company, D.Neb., 184 F.Supp. 886, 901, the court has a choice of several alternatives. It might grant a "permanent" injunction and vacate it at some indefinite future time; grant an injunction subject to being reviewed within a stated period of time to see if vacation is appropriate; decline the injunction but retain jurisdiction of the case so that if future similar violations occur, the court can consider the record herein; or determine that no cause has been shown

for an injunction to restrain future violations.

■ After weighing the record and the effects of an injunction very carefully, I have come to the conclusion that an injunction should be granted restraining the defendant from violating the overtime compensation and record keeping provisions of the Fair Labor Standards Act of 1938 as amended (29 U.S.C.A. §§ 207 and 211(c)). As to the scope of the injunction, there is some testimony in the record to the effect that the dispatchers in the Little Rock terminal are representative of the dispatchers that work for the defendant in other terminals in other cities and states. The testimony as a whole, however, leaves me with the impression that dispatchers in the different terminals of defendant have divergent duties and responsibilities. At least the record is indefinite and incomplete on this subject. For that reason, the injunction will be limited to the dispatchers who work in the Little Rock, Arkansas terminal, or, regardless of title, to persons who work in the Little Rock, Arkansas terminal who have substantially the same duties and responsibilities as the employees who were designated as dispatchers at the time of this hearing. Further, the injunction will be subject to review after it has been in force for a period of six months. The six month period shall begin on the day the injunctive decree is filed with the clerk of this court, and after the six month period has elapsed, the defendant will be permitted to file its application for relief. After hearing on such application, if this court is convinced that the defendant is in full compliance with the Act in respect to the subject matter of this cause and no future violations are likely, then the court will consider vacating the injunction.

This memorandum opinion shall be filed as the findings of fact and conclusions of law.

Plaintiff will submit precedent for decree.