**Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**ARKANSAS BEST FREIGHT SYSTEM, INC., Defendant.**

**Civ. A. 1630.**

United States District Court
W. D. Arkansas,
Fort Smith Division.
July 20, 1962.

Earl Street, Regional Atty., U. S. Dept. of Labor, T. Hagan Allin, Trial Atty., U. S. Dept. of Labor, Dallas, Tex., for plaintiff.

Thomas Harper, Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

On November 1, 1961, plaintiff filed his complaint in the United States District Court for the Eastern District of Arkansas, Western Division, seeking judgment permanently enjoining and restraining defendant and all persons acting or claiming to act in its behalf and interest from violating the provisions of Sections 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. §§ 215(a) (2) and 215(a) (5).

The defendant, Arkansas Best Freight System, Inc., is a corporation organized and existing under and by virtue of the laws of Arkansas with its principal business office in the City of Fort Smith, Sebastian County, Arkansas. It also owns, operates and maintains branch terminals at Little Rock, Ark., Shreveport, La., and elsewhere. It is a common carrier of motor freight, licensed by the Interstate Commerce Commission, and is now and at all times pertinent herein has been engaged in the transportation of goods in interstate commerce to and from its principal establishment in Fort Smith, Arkansas, its branch terminals located in Little Rock, Arkansas, Shreveport, Louisiana, and in eight other states.

On December 18, 1961, defendant filed its answer in which it admitted that it had employed and was then employing several hundred employees in its several places of business, but denied that it had violated the provisions of Sections 6 and 7 of the Act, 29 U.S.C.A. §§ 206 and 207, or any of the provisions of any regulation or order of the Administrator issued under said Act. Denied that it violated any of the provisions of Sec. 11(c) of the Act, or any regulation or order made or continued in effect under the provisions of Sec. 11(d) of the Act, 29 U.S.C.A. § 211(c) and (d). Denied that it had violated Secs. 15(a) (2) and 15(a) (5).

Jurisdiction of the action is conferred upon the court by Sec. 17 of the Act, 29 U.S.C.A. § 217.

On January 19, 1962, the court for the Eastern District of Arkansas, Western Division, by order, transferred the case to this court.

By use of discovery procedures and stipulation of counsel, the parties have narrowed very substantially the issues first raised by the complaint and answer. Originally, there was involved the question of whether 16 employees of the defendant were exempt from the provisions of Sections 6 and 7 of the Fair Labor Standards Act. By stipulation it was agreed that through changes in the character of the employment, or increases in salary, or other facts, five, Charles Cox, Carl L. Mizell, William Bonn, David Stubblefield, and William Duff, of the 16 employees were exempt from the provisions of the Act at the time of the trial; that one, E. E. Barrentine, was not involved for the reason that he was no longer employed by defendant; that five other employees, Morris H. Voan, Prentice Shelby, Fred Parker, Ralph Abbott, and James O. Smith, classified as over-the-road dispatchers were not presently ex-

empt and that the defendant would comply with the Act as to them; that another, Dave Roberts, is not now exempt but defendant agreed that it would comply with the Act as to him or the position he presently occupies. As a result, there was left for determination only the issues of whether Jerry Trantham, parts manager at Little Rock; Sam McCright, equipment control manager at Little Rock; Herman Reed, city dispatcher at Little Rock; and Paul Pope, city dispatcher at Fort Smith, were exempt from the provisions of the Act.

At the trial the defendant claimed exemption for Trantham and McCright under the provisions of Sec. 13(a) of the Act as administrative employees, with an additional exemption claimed for McCright under Sec. 13(b) (1), commonly known as the Motor Carrier Exemption, which exempts from coverage of certain portions of the Act employees whose hours are subject to regulation by the Interstate Commerce Commission.

Exemptions were claimed for the two city dispatchers, Herman Reed of Little Rock and Paul Pope of Fort Smith, as administrative employees and also under the motor carrier exemption,

In its brief the defendant states:

"The defendant must concede at the outset that it does not believe the claim of motor carrier exemption is applicable in the case of either [any] of these four employees, since neither [none] of them falls within the category of employees considered entitled to this exemption, that is, drivers, drivers' helpers, loaders and mechanics."

However, the defendant does earnestly and strongly contend that each of the four employees is exempt under the administrative exemption as set forth in 29 C.F.R., Sec. 541.2, 29 U.S.C.App. pp. 551–552.

By Sec. 13 of the Act, 29 U.S.C.A. § 213(a), the maximum hours and minimum wage requirements are made inapplicable, inter alia, to "any employee employed in a bona fide * * * administrative * * * capacity * * * (as such terms are defined and delimited [from time to time] by regulations of the Administrator) * * *."[1]

The applicable regulations as set forth on page 4 of plaintiff's brief are as follows:

"The term 'employee employed in a bona fide * * * administrative * * * capacity' in section 13(a) (1) of the act shall mean any employee:

"(a) Whose primary duty consists of the performance of office or nonmanual field work directly related to management policies or general business operations of his employer or his employer's customers; and

"(b) Who customarily and regularly exercises discretion and independent judgment; and

"(c) (1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined in this subpart); or

"(2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; or

"(3) Who executes under only general supervision special assignments and tasks; and

"(d) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours worked in the workweek to activities which are not directly and closely re-

1. Sec. 13 was amended by the Fair Labor Standards amendments of 1961 Public Law 87–30, 75 Stat. 65, 29 U.S.C.A. § 213. As far as this case is concerned the amendments are immaterial except to recodify Reorganization Plan No. 6, 15 F.R. 3174, 64 Stat. 1263, 5 U.S.C.A., following Sec. 611 which transferred the functions of the Administrator to the Secretary of Labor.

lated to the performance of the work described in paragraphs (a) through (c) of this section; and [Paragraph (d) amended, 26 F.R. 8637, September 15, 1961]

"(e) Who is compensated for his services on a salary or fee basis at a rate of not less than $95 per week (or $70 per week if employed in Puerto Rico or the Virgin Islands) exclusive of board, lodging, or other facilities:

"*Provided*, That an employee who is compensated on a salary or fee basis at a rate of not less than $125 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the performance of office or nonmanual field work directly related to management policies of general business operations of his employer or his employer's customers, which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all of the requirements of this section. [Paragraph (e) amended, 24 F.R. 581, January 27, 1959]"

The plaintiff in his brief contends (1) that since the five separate requirements for administrative exemption are stated in the conjunctive, that the employer has the burden of proof of the existence of each requirement in order for the employee to be held exempt from the provisions of the Act; (2) that the Fair Labor Standards Act is remedial and must be given a liberal construction in accordance with its clearly expressed intent and purposes; (3) that numerous appellate courts have held that exemptions under the Act are to be narrowly construed against the employer claiming the same; and (4) that the Administrator's regulations defining the exemption for executive or administrative employees have been consistently upheld by the courts.

In Fleming v. Hawkeye Pearl Button Co., (8 Cir. 1940) 113 F.2d 52, the court at page 56 said:

"We must assume that all employees in interstate commerce, so far as reasonably possible, should be made subject to the provisions of the Act."

In Helena Glendale Ferry Co. v. Walling, (8 Cir. 1942) 132 F.2d 616, the court at page 619 said:

" * * * Those asserting in reference to any employee, an exemption under the Act, must establish the exemption as being both within the spirit and the letter of the statute. Bowie v. Gonzalez, supra. [3 Cir. 1941, 117 F.2d 11] Since the statute is remedial, and by its terms includes every employer and every employee coming within the broad scope of its coverage, the section granting exemptions is to be construed strictly against those claiming them. Fleming v. Hawkeye Pearl Button Co., supra."

See, also, Ralph Knight Inc. v. Mantel, (8 Cir. 1943) 135 F.2d 514, 517.

Judge Winter, speaking for the U. S. District Court for the District of Maryland, on January 23, 1962, in the case of Harrison v. Preston Trucking Company, 201 F.Supp. 654, at page 656 said:

"There is no need, at this late date, for extensive discussion of the remedial nature of the Fair Labor Standards Act, the liberal construction to be afforded it, and the strict construction to be afforded any claimed exemption from the Act.

Typical of the authorities establishing these basic rules are Walling v. General Industries Co., 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947); Aulen v. Triumph Explosive, 58 F. Supp. 4 (D.C.Md.1944, Chestnut, J.); Fellabaum v. Swift & Co., 54 F. Supp. 353 (D.C.N.D.Ohio, 1944).

"The many adjudicated cases also establish that each case presents primarily a question largely factual in nature. With attention to these basic principles and consideration also that in a case like the instant one, the employee tends to minimize his discretionary duties and the employer to overemphasize them."

In the determination of the factual issue and the application of the applicable regulations, it is necessary to consider the duties and work performed by each of the four employees separately. There is no magic ipso facto in the job classification.

Jerry Trantham is the manager of the separate parts department within the maintenance division with headquarters at the Little Rock terminal of defendant. He has sole charge of the parts department, and in connection with the operation thereof has one employee directly under him. He is charged with the responsibility of buying all the parts for the repair of the equipment used in the business and determines the use to be made of the parts in various types of repair. He regularly exercises independent judgment and discretion in determining the type and quality of the parts to be used, and his decision is reversible only by the shop foreman or the vice president in charge of maintenance, and then only when there is a disagreement between him and the mechanics. He spends less than two hours per day in any type of clerical work, and regularly works from 7:30 or 8:00 in the morning to 5:00 or 5:30 in the afternoon, five days a week. His salary is $550.00 per month, which on a weekly basis is $126.92. Thus, his salary exceeds the upset salary requirement of $125.00 per week as provided in the proviso contained in subsection (e) of the administrative exemption quoted above, and certainly his work is directly related to management policies and the business operations of the defendant.

Trantham, prior to being employed by defendant, had many years experience as superintendent and purchaser of parts for the Rebsamen Motor Company of Little Rock. He was an experienced "parts man" and thoroughly equipped to exercise a sound discretion and correct judgment on the parts needed for motor vehicles. In his work with the defendant he is charged with the responsibility by a vice president with keeping on hand at all times available parts for the repair of the trucks of the entire system, which serves ten states and has terminals in most of the larger cities in the ten states in which the defendant is authorized to engage in the transportation business. No terminal manager has any authority to purchase parts for the repair of the trucks operating out of his terminal but must file his requisition with Trantham. In the event a truck is disabled and moves into a terminal, the terminal manager reports its disability and Trantham either causes to be sent the necessary parts for repair or directs that the truck be returned to Little Rock, the central headquarters for the repair of the trucks. In fact, without such an arrangement there would be no coordination of the repair work, and it is a matter of common knowledge that trucks being steadily used, either as pickup and delivery trucks or road trucks, are constantly in need of repairs and it requires a man of the qualifications of Trantham to exercise a sound discretion and solid judgment in order to keep the trucks rolling and the business of the defendant operating.

Sam A. McCright is the manager of the equipment control department. It is a separate department. His salary is $525.00 per month, or $121.11 per week, which does not meet the upset salary requirement of $125.00 per week. However, he does receive a salary in excess of $95.00 per week, and thus meets the requirements of subparagraph (e) of the administrative exemption. He clearly meets all of the other requirements of the exemption. His primary duty is supervising the control of the interchange of trailers with other truck lines, and his work is definitely related to management policies. He regularly exercises discretion and independent judgment in the acceptance of foreign trailers (which are trailers received from other truck lines in interchange), and in the expeditious routing of trailers so as to return foreign trailers to their owners as soon as possible and in order that the defendant may receive as soon as possible its trailers given in interchange. He directly assists the management in a bona fide executive

or administrative capacity and exercises supervision over all of the various branch terminal managers, who must obtain his approval before a foreign trailer can be accepted. On November 25, 1960, the vice president of defendant in charge of transportation issued Bulletin No. 76 addressed to all stations of the defendant and Healzer Cartage Company. The duties of the branch managers were outlined in the bulletin and they were told:

"In instances where it might be necessary that we interchange a foreign trailer, we prefer to handle with owner direct from our equipment control department. ABF stations must request this authority from Sam McCright at Little Rock. Healzer stations must contact Kenneth Lovelady at Kansas City."

Mr. McCright devotes far less than 20 percent of his hours to any type of clerical work. He examines the trailer manifest or control each day, which requires about 30 minutes of his time, and the remainder of his time is spent entirely in administrative duties as the head of the department. He is recognized as the head of a separate department and carries a business card with such designation.

The status of the other two employees, Herman Reed and Paul Pope, may be considered together since their duties and job activities are quite similar. In this connection, the defendant introduced the deposition of E. E. Barrentine, formerly employed by the defendant as city dispatcher at Little Rock, but now employed by another company. Reed is city dispatcher at Little Rock, where 25 to 30 trucks operate daily in pick-up and delivery. Pope is city dispatcher at Fort Smith with 25 trucks in operation. Reed's salary is $550.00 per month or $126.92 per week. Pope's salary is $435.-00 per month or $100.38 per week. Thus, Reed's salary is in excess of the upset salary provision. Pope's salary is in excess of the minimum per week figure prescribed in subparagraph (a) of the exemption.

These dispatchers have charge of and directly supervise the activities of all city pick-up and delivery employees in Little Rock and Fort Smith. They assign drivers to particular areas of the city, prescribe the routes for the driver to follow in making pick-ups or deliveries of shipments. They regulate his work in such a way as to obtain the most economical operation and maximum production from each driver. The determination of the type of equipment to be sent is made entirely by the exercise of the judgment of the dispatcher. In fact, the dispatcher exercises his own independent judgment and discretion in one of the most important phases of the business of the defendant. The dispatcher's recommendation as to employment and discharge of drivers and their discipline is given weight by the management. Their primary work is non-manual and directly relates to the management policies and general business operations. Neither of them devotes as much as 20 percent of his time to purely clerical work.

In Goldberg v. Strickland Transportation Co., (E.D.Ark. March 13, 1962), 203 F.Supp. 417, Judge Young held that road dispatchers were not exempt from the provisions of the Act. The court referred to Mitchell v. Branch Motor Express Co., (E.D.Pa.1958) 168 F.Supp. 72, and stated:

"* * * In Mitchell the following facts were present which are not present here: The dispatchers directed the drivers (local) as to the order, method and occasionally the routing to be used in making pick-ups and deliveries; directed the loading of long-distance vehicles in order to insure safety; directed the maintenance readiness of the vehicles; directed the platform supervisors and their men in doing their work of loading, unloading and storing; disciplined, suspended and recommended drivers for discharge; employed extra drivers; determined the number and size of vehicles used; and straightened out the complaints of drivers. In the case at hand, the

dock foreman has complete charge of the loading of freight and all of the local drivers, and the dispatcher has no authority in regard to either of these phases of the work."

It is apparent to anyone familiar with the work that there is a broad difference between a road dispatcher and a city dispatcher as pointed out by Judge Young.

The court is convinced that each of the four employees whose status is in question meets all of the requirements for the reason that a reference to the facts is sufficient answer to the contention of plaintiff that the employees do not meet all of the requirements.

In Mitchell v. Branch Motor Express Co., supra, it was held that the trucking company sustained the burden of proving that two dispatchers, both earning in excess of $100.00 a week, who planned and directed local drivers as to order, method and routing to be used in making pick-ups and deliveries, as well as generally supervising transportation business in the area, including work of drivers and platform workers were exempt from wage and hour provisions on the ground that they were employed in a bona fide administrative or executive capacity.

In Clougherty v. James Vernor Co., (6 Cir. 1951) 187 F.2d 288, one of defendant's employees who was involved was designated as "chief router." The court, in discussing whether such employee was covered by the act, at page 293 said:

"Like, the chief router, was claimed by defendant to be an administrator, and the court held that this claim was sustained by the evidence. We think this conclusion was correct. * * * Like was compensated considerably more than $200 per month, and he performed under general supervision responsible non-manual office work directly related to management along specialized lines requiring special training and experience, and requiring the exercise of discretion and independent judgment."

The plaintiff contends that both Reed and Pope spent a considerable portion of time on the telephone, either receiving calls from customers desiring freight to be picked up or answering inquiries and complaints pertaining to either pick-up or delivery of freight, and receiving calls from city drivers pursuant to instructions to call the office after each third delivery, and that therefore their duties were purely routine and in no sense necessitated the making of decisions of any significance relating to management policies or the general business operations of the defendant or the defendant's customers. Such contention is contrary to the undisputed testimony, and the contention is completely answered in the case of Harrison v. Preston Trucking Company, supra. In that case at page 658 of 201 F. Supp. the court said:

"What are activities 'directly and closely related' to exempt work is the subject of the Administrator's regulations and has received judicial construction. The Regulations, 29 C.F.R., Cum.Supp.1961, § 541.200, describe a number of examples to clarify the differences between work which is directly and closely related, and work which is unrelated or only remotely related. The examples seem to make clear that the test is not whether the work is essential to the proper performance of the more important work, but whether it is related. Thus, notemaking, by a consultant when standing alone or separated from his primary duties, would be routine and, hence, not directly and closely related within the meaning of the regulations, but at the same time such work is necessary to the proper performance of his primary duties and thus is considered to be 'directly and closely related' when performed by the consultant.

"Judge Chesnut, in the Triumph case, supra, treated layout and detail work on designs as directly and closely related to the primary work

of certain machine designers who were otherwise exempt from coverage by the Act and, in reaching such conclusion, Judge Chesnut recognized that less qualified employees were perfectly capable of performing such work, but the work was an essential and necessary step in the preparation of a machine design and, hence, was closely and directly related. More specifically, in the case of a dispatcher of an interstate trucker in the New York & New Brunswick Auto Exp. Co. case, McComb v. New York & New Brunswick Auto Exp. Co., D.C., 95 F.Supp. 636 supra, the two hours of one dispatcher's work day spent in matching weigh bills to manifests was treated as directly and closely related to the general duties of dispatching, which were held to be exempt from coverage.

"Since the plaintiff's duties involved the exercise of discretion in providing transportation equipment, assignment of drivers, tracing of freight, selection of extra drivers determined to be needed by plaintiff, or at least recommended to be employed by plaintiff, I conclude that the receipt of telephone calls by the plaintiff in regard to such subjects was directly and closely related to his primary duties. The mere fact that at times some of these functions might be performed by clerical employees is, in the light of the regulations and Judge Chesnut's opinion, immaterial, notwithstanding plaintiff's argument to the contrary. The stripping of freight bills seems to me to fall into the same category, since they provided the documentary evidence of the assignments and exercise of discretion and judgment which plaintiff was called upon to make."

There does not seem to be any question that each of the four meets every requirement of the exemption. The work of each required the exercise of discretion and independent judgment, and

was directly related to management policies of general business operations of his employer or of his employer's customers. Therefore, each of the employees is exempt. Plaintiff is not entitled to an injunction as prayed in the complaint, and judgment is being entered today dismissing the complaint.

The above constitutes the findings of fact and conclusions of law of the court as required and authorized by Rule 52(a), Fed.R.Civ.P., 28 U.S.C.A.

In view of the fact that the status of other employees was agreed upon in the stipulation, the attorneys for the parties are directed to prepare precedent for the entry of a judgment in accordance with the stipulation and the holding above set forth.