William E. BROCK, Secretary of Labor, United States Department of Labor

v.

NATIONAL HEALTH CORPORATION, et al.

No. 3–83–0627.

United States District Court, M.D. Tennessee, Nashville Division.

March 31, 1987.

Thomas A. Grooms, U.S. Dept. of Labor, Office of Solicitor, Nashville, Tenn., for plaintiff.

Richard F. LaRoche, Jr., Murfreesboro, Tenn., Terry M. Brooks, Larry W. Bridgesmith, Constangy, Brooks & Smith, Nashville, Tenn., for defendant.

## MEMORANDUM

HIGGINS, District Judge.

The Secretary of Labor, United States Department of Labor, brought this action on August 11, 1983, against National Health Corporation (NHC). The action was initiated by the former Secretary of Labor, Raymond J. Donovan, and is now maintained by the present Secretary of Labor, William E. Brock. The Secretary of Labor alleges that the defendant repeatedly and willfully violated provisions of the Fair Labor Standards Act (FLSA or Act), as amended, 29 U.S.C. 201, *et seq.* (1982), by employing persons for workweeks longer than forty (40) hours without compensating those employees for their employment in excess of such hours at rates not less than one and one-half times their regular rate of pay pursuant to sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. § 207 (Supp.1985) and § 215(a)(2) (1982). It also is claimed that the defendant repeatedly and willfully failed to make, keep, and preserve adequate and accurate records of daily and total weekly hours actually worked by certain employees in violation of §§ 11(c) and 15(a)(5) of the FLSA. 29 U.S.C. §§ 211(c) and 215(a)(5) (1982). The plaintiff seeks to permanently enjoin the defendant from violating the above provisions, to prevent the withholding of payment of overtime compensation due employees for a three-year period prior to the commencement of this action under 29 U.S.C. § 217 (1982), and to obtain liquidated damages in the amount of unpaid back wages due the employees under 29 U.S.C. § 216 (1976).

The parties agreed to the entry of a consent injunction (entered August 6, 1984) prohibiting violations of the Act by the defendant with regard to certain employees. This agreement also provided that the

defendant disputed the application of the injunction to the employees which the defendant identifies as staff accountants.

Upon entry of the consent injunction, the defendant was permanently enjoined from employing persons for workweeks longer than forty hours without compensating such employees for their hours in excess of forty at rates not less than time and one-half their regular rate. It was also enjoined from failing to keep accurate records. An amended consent injunction was entered on October 12, 1984. The amended injunction ordered the defendant to pay overtime compensation in the amount of $11,539.92 due employees for the period August 2, 1979, to January 15, 1984, in accordance with a schedule of names and amounts. The sums are to be distributed by the plaintiff to the employees within three (3) years after the signing of the order. An agreed order was entered on March 5, 1985, amending the original complaint to add the names of seven employees.

There are four issues before the Court for resolution: (1) whether the employees denominated "staff accountants" by the defendant are employed in a bona fide administrative capacity within the meaning of 29 U.S.C. § 213(a)(1) of the Act so as to exempt the defendant from the payment of overtime wages; (2) whether the defendant must keep the records required by 29 U.S.C. § 211(c) of the Act; (3) whether the Secretary is entitled to recover liquidated damages in an amount equal to the contested backwages due the "staff accountants" under 29 U.S.C. § 216 and 29 U.S.C. § 260; and (4) whether the Secretary is entitled under 29 U.S.C. § 255(a) to recover claimed backwages due the "staff accountants" for a two-year or a three-year period prior to the commencement of this action. A determination of the staff accountants' status under the FLSA must be made in order to resolve the remaining issues before this Court.[1]

This Court has jurisdiction of the parties and subject matter of this action under 29 U.S.C. § 216(c) (1976 and Supp.1986) and 29 U.S.C. § 217 (1985), and 28 U.S.C. § 1345 (1976). The defendant is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(r) and 203(s) (1978).

This action was tried without the intervention of a jury on May 6-9, 1985. For the reasons set forth below, the Court finds in favor of the plaintiff.

### I.

It has been stipulated by the parties that the staff accountants have worked more than 40 hours in workweeks during the period at issue. NHC has never paid the employees[2] in this action time and one-half their regular rate for any workweek in which they worked more than 40 hours. NHC has never maintained a record of the hours worked by the employees involved in the instant case but it has maintained a record of the rates of pay.

NHC owns, leases or manages fifty (50) nursing homes across the Southeast, each of which provide long-term health care. Mr. Donald K. Daniel is the Controller of NHC. He is a certified public accountant (C.P.A.) and has held this position for seven (7) years. Mr. Daniel is responsible for the

1. The resolution of the disputed issues heard at trial relate exclusively and solely to those employees denominated, or carrying out the duties of "staff accountants" at NHC, the home office, located in Murfreesboro, Tennessee.

2. The names of the employees due back wages if the Secretary is successful in this action are: Janet Carol Garner, Betty Ann Irving Webb, Dwinna Sue Bell, Vicky Massey, William N. Prather, Susan England, Adella Harter, Glenna Grizzle, Theresa Meadows, Amy Schaefer, Larry McIntosh, Debra Holder, and Dana Kennedy. Since August 11, 1980, NHC has employed four

staff accountants at a salary of $250.00 or less per week. All four of those staff accountants were paid a salary in excess of $155.00 per week. As to those four individuals: (1) Glenna Grizzle was paid the short-test salary minimum of $13,000.00 per year beginning July, 1981; (2) Larry Dee McIntosh's salary did not meet the short-test salary minimum during his term of employment with NHC; (3) Susan England was paid the short-test salary minimum beginning January, 1981; and (4) Theresa Meadows was paid, at least, the short-test salary minimum beginning January, 1982.

internal controls of NHC, its subsidiaries, and affiliate corporations.

Ms. Charlotte Swafford, NHC's Assistant Treasurer, began working at NHC in 1973 as a staff accountant and was subsequently promoted to the position of accounting supervisor. In 1982, she was promoted to the position of assistant treasurer. She has a Bachelor of Science degree in Business Administration with a major in Secondary Education. Her duty as an assistant treasurer is to assist the president and the treasurer of NHC in performing whatever functions they deem necessary.

NHC employs or employed approximately seventeen [3] persons as staff accountants during the two-year or three-year period in question, August 11, 1980, through August 11, 1983.[4] Several persons employed as staff accountants, do not have degrees in accounting. For example, Ms. Harter has a Bachelor of Science degree in mathematics, a Master of Education degree in mathematics education and has passed the C.P.A. examination. Jean Duncan has only a high school education, while Linda Harris has an Associate of Arts degree. Staff accountants work under the direction of Mr. Daniel and Ms. Swafford.[5]

The primary work of a staff accountant is to audit the nursing home books prepared by bookkeepers at the nursing home facilities. This audit is comprised of "back up" or initial review work. The review is scheduled to be completed during the period from the 10th to the 20th day of each month, but in reality, the review often takes longer and/or the staff accountants work on Saturdays. The audit, according to the defendant, consists of comparing various elements of the current month's activity against other elements, as well as examining the current month's activity against the prior month's activities to determine unusual fluctuations in items of expense or receipt and the cause of such fluctuations. The plaintiff claims that the audit is to check for errors committed by bookkeepers in the preparation of the books. Each month, seasoned staff accountants are assigned the same nursing home books for review while newer staff accountants may review different sets of books. Before the summer of 1982, a staff accountant would generally review the nursing home books and, if he or she found an error or questioned an item, he or she would "paper-clip" it and/or write a note so that Ms. Swafford or Ms. Louise Evins, the then Assistant-Treasurer, could check the item. Any contact with the nursing home bookkeepers which was necessary to correct the problem was initiated by Ms. Swafford or Ms. Evins. Beginning in the summer of 1982, seasoned staff accountants began resolving problems themselves by investigating those problems at the level of the facility's bookkeeper, the facility's administrator or the regional administrator. The new staff accountants continued to attach notes to the nursing home books for consideration by Ms. Swafford or a seasoned staff accountant.

The bookkeepers at the nursing homes have two major reference manuals to assist them in completing the "books" each month: the Bookkeeper's Manual and the *Master Chart of Accounts*. When staff accountants begin working at NHC, they are also provided with a document entitled "Directions for Checking Monthly Reports". This manual gives the step-by-step process of reviewing nursing home books.

---

3. The name of Sharon Kessens Phares was included in the plaintiff's *Motion to Amend* (dated June 7, 1985). The defendant disputed her classification as a staff accountant. The Court ordered that she be considered in the determination of whether her position was exempt under § 13(a) of the Act. She has no degree in accounting but her prior work experience included a position as assistant vice-president of a nursing home chain with primary duties in accounting.

4. The period in question is dependent upon which statute of limitations is applicable if liability for FLSA violations is found. If the violation is willful, a three-year period is proper; if the violation is not willful, a two-year period is appropriate. 29 U.S.C. § 255(a).

5. The Court finds that although the employees whose exemption is at issue in this case are called "staff accountants" by NHC, it was not necessary to have an accounting degree in order to do this work or, in fact, to supervise others doing it.

The *Master Chart of Accounts* contains computer reference codes which the bookkeepers use to code the data to be put into the computer during their monthly audits. After the "books" of the nursing homes are received at NHC, the staff accountants "review" them before they are sent to the computer center to be put into the general ledger.

The staff accountants have other duties, some of which arise on an "as needed" basis and some of which are monthly. These duties vary from staff accountant to staff accountant. Staff accountants assist the Controller, Mr. Daniel, on an as-needed basis, in preparing various quarterly and annual reports, including annual reports to shareholders, reports to the Securities and Exchange Commission, Medicaid and Medicare cost reports, income, franchise, excise, property, and other tax returns, depreciation schedules, and financial schedules for reports and loans. However, any assignment which the staff accountants receive from Mr. Daniel usually is performed after the completion of the monthly audit of the nursing home books. An example of one such NHC report is a report prepared for higher management officials using a computerized data base. The preparation of such a report requires the staff accountant to gather data from the computer-generated general ledgers for each nursing home. This data is then transferred from the individual general ledgers to "spread sheets" or other documents which require the accumulation of the data for reporting purposes. Other duties include work on in-house books by some staff accountants for NHC's subsidiary corporations for the first few days of each month. These staff accountants perform substantially the same duties as the bookkeepers of the nursing homes when they prepare the in-house books. Also, a few staff accountants assist in tasks such as the preparation of payrolls during the times when they are not auditing nursing home books or preparing reports.

The testimony of NHC staff accountant Glenna Grizzle outlined her duties of reviewing the financial documents as follows: reviewing cash receipt journals, check stubs, payroll records, revenue journals, accounts payable, as well as other records. However, in September of 1982 her job responsibilities changed slightly as she began to devote her time to resolving problems found by other people who did the initial work. She characterized all her work as bookkeeping. Ms. Grizzle's duties, viewed by the Court within the spectrum of all of the other similarly-situated employees at NHC, are exemplary of the seasoned "staff accountant's" duties. That portion of her time devoted to "resolving problems" can be interpreted as preparing the books for the computer into which all the information was placed. Similarly, after July, 1982, senior staff accountants, Dwinna Bell and Susan England began to resolve the problems they found. They no longer went to another staff accountant for resolution. Ms. Bell, upon questioning by the Court, admitted this change did not have any significant effect on the nature of her job. Ms. Grizzle and the other staff accountants were still supervised by Ms. Swafford and Ms. Evins,[6] both of whom reported directly to the president and the treasurer.

Dwinna Bell, a staff accountant who also testified, said she dealt with ledger problems and a balloon payment problem. When she discovered ledger problems, she would discuss them with her supervisor. Also included in her responsibilities was showing the new accountants the nuts and bolts of reviewing the books and records for the nursing homes. These duties composed a small part of the staff accountant's work load. Most of the staff accountants' jobs encompassed fewer responsibilities than that of Ms. Grizzle, and Ms. Bell, whose responsibilities were minimal.

Debbie Price, one of the staff accountants, testified that seventy-nine to ninety percent (79–90%) of a staff accountant's time was spent reviewing the books and

---

6. Ms. Evins, Assistant Treasurer of NHC at the time of her death in September, 1982, was succeeded by Ms. Charlotte Swafford. Ms. Evins was hired by NHC in 1970 as a bookkeeper and did not have a degree in accounting.

records of the nursing homes. Debbie Price's work responsibilities can be said to be exemplary of those of the staff accountants. The Court, crediting the testimony of the above staff accountants, notes that it may be summarily said that all the staff accountants were supervised in their work.

Dr. Charles O. Rolen testified as an expert witness at the trial that, in his opinion, the NHC staff accountants were "bookkeepers." He stated that their jobs were not comprised of enough of the basic accounting duties to be classified as an accountant. Dr. Rolen has an undergraduate degree, a Masters of Science degree and a Ph.D. in Accounting. He is a Certified Public Accountant, and is, presently, the Head of the Law and Accounting Department of the School of Business at Tennessee State University in Nashville, Tennessee. The Court credits the testimony of Dr. Rolen and deems him to be well qualified to express the opinion he reached in this instance.

## II.

The plaintiff alleges that NHC is in violation of §§ 7(a)(1) and 11(c) of the FLSA. 29 U.S.C. § 207(a)(1) (Supp.1985) and 29 U.S.C. § 211(c) (1982). These charges arise from the violation of § 15 of the Act, 29 U.S.C. § 215(a)(2) and (5) (1982), which makes it unlawful for any person to violate any provision of § 7 or § 11. Section 7 provides as follows:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

The requirements of § 11(c) are:

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the person employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

The defendant claims exemption from the above requirements on the basis of § 13(a)(1) of the FLSA. The defendant contends that its "staff accountants" are bona fide administrative employees under 13(a)(1) and therefore it is exempt from paying overtime and maintaining records, 29 U.S.C. § 213(a) (1965 & Supp.1986). The exemptions from the Act are to be narrowly construed against the party asserting them and "their application limited to those establishments plainly and unmistakably within their terms and spirit." *Brennan v. Southern Productions, Inc.*, 513 F.2d 740, 744–745 (6th Cir.1975); *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960). In making the necessary determination of exemptions, the interpretive regulations of the Department of Labor may be used. The Department of Labor's Regulations are to be treated as "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). The interpretation of the provisions at issue in this case is governed by the regulations set forth in 29 C.F.R. 541.2 *et seq.* (1984), in addition to pertinent case law.

The determination of an exemption is a question of fact. *Walling v. General Industries Co.*, 330 U.S. 545, 550, 67 S.Ct. 883, 885, 91 L.Ed. 1088 (1947). The regulations set forth the employees who may be bona fide administrative employees. It is necessary to scrutinize the categories set forth in the regulations to determine if the staff accountants of NHC fall within any

of the exceptions. Section 541.2 states as follows:

The term "employee employed in a bona fide * * * administrative * * * capacity" in section 13(a)(1) of the Act shall mean any employee:

(a) whose primary duty consists of either:

(1) The performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers ... and shall be deemed to meet all the requirements of this section;

(b) Who customarily and regularly exercises direction and independent judgment; and

(c)(1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined in the regulations of this subpart), or

(2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge, or

(3) Who executes under only general supervision special assignments and tasks; and

(d) Who does not devote more than 20 percent ... of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and

(e)(1) Who is compensated for his services on a salary or fee basis at a rate of not less than $155 per week ($130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities, or

(2) Who, ... *Provided,* That an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week ($200 per week if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities, the performance of work described in paragraph (a) of this section, which includes work requiring the exercise of discretion and independent judgment.

29 C.F.R. § 541.201(a)(2) (1984). The fact that NHC's job description designates the position at issue as "staff accountant" is not determinative in establishing whether such an employee is exempt from the Act. An exemption is based upon the activities of the job, not the title.

An employee meets the administrative exemption only if his or her primary duty is office or nonmanual work *directly related* to the employer's management policies or general business policies. 29 C.F.R. § 541.-206(a) (1984). Primary duty is defined in § 541.103. This regulation establishes a fifty (50) percent rule of thumb test. An employee who spends over fifty percent of his or her time performing managerial duties is considered to have management as a primary duty. The regulations further state:

Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.

The employee must also exercise discretion and independent judgment to fall within the administrative exemption exception. The meaning of discretion and independent judgment is explained in § 541.207:

(a) In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term

as used in the regulations in Subpart A of this part, more over, implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.

\* \* \* \* \* \*

(c) Distinguished from skills and procedures:

(1) Perhaps the most frequent cause of misapplication of the term "discretion and independent judgment" is the failure to distinguish it from the use of skill in various respects. An employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories, with or without the use of testing or measuring devices, is not exercising discretion and independent judgment within the meaning of § 541.2.

\* \* \* \* \* \*

(3) ... The substitution of the employee's memory for the manual of standards does not convert the character of the work performed to work requiring the exercise of discretion and independent judgment as required by the regulations in subpart (A) of this part. The mere fact that the employee uses his knowledge and experience does not change his decision.

\* \* \* \* \* \*

(d) Decisions in significant matters:

(1) ... The divisions have consistently taken the position that decisions of this nature concerning relatively unimportant matters are not those intended by the regulations in Subpart A of this part, but that the discretion and independent judgment exercised must be real and substantial, that is, they must be exercised with respect to matters of consequence.

(2) ... It should be clear, however, that the term "discretion and independent judgment," within the meaning of the regulations in Subpart A of this part,

does not apply to the kinds of decisions normally made by clerical and similar types of employees. The term does apply to the kinds of decisions normally made by persons who formulate or participate in the formulation of policy within their spheres of responsibility or who exercise authority within a wide range to commit their employer in substantial respects financially or otherwise.

\* \* \* \* \* \*

(g) Customarily and regularly: The work of an exempt administrative employee must require the exercise of discretion and independent judgment customarily and regularly. The phrase "customarily and regularly" signifies a frequency which must be greater than occasional but which, of course, may be less than constant. The requirement will be met by the employee who normally and recurrently is called upon to exercise and does exercise discretion and independent judgment in the day-to-day performance of his duties. The requirement is not met by the occasional exercise of discretion and independent judgment.

This section also states that the decisions of the employee do not have to be final in order to classify that employee's duties as related to management policies of business operations. § 541.207(e).

The duties which directly relate to management policies or general business operations are discussed in § 541.205. These regulations state that:

(a) ... the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.

\* \* \* \* \* \*

(c) As used to describe work of substantial importance to the management or operation of the business, the phrase "directly related to management policies or general business operations" is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole. Employees whose work is "directly related" to management policies or to general

business operations include those [whose] work affects policy or whose responsibility it is to execute or carry it out. The phrase also includes a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business.

(1) ... Likewise it is clear that bookkeepers, secretaries, and clerks of various kinds hold the run-of-the-mine [sic] positions in any ordinary business and are not performing work directly related to management policies or general business operations.

* * * * * *

(2) An employee performing routine clerical duties obviously is not performing work of substantial importance to the management or operation of the business even though he may exercise some measure of discretion and judgment as to the manner in which he performs his clerical tasks.

Once a bona fide administrative employee exists then 29 C.F.R. 541.2 establishes the two tests used in determining whether an employee is exempt under § 13(a)(1). The long test is found in § 541.2(a) through (e)(1) and the short test is enunciated in (e)(2) of the same section. The first factor to determine which test is applicable to an employee is the employee's salary. To fall within the long test, an employee must be compensated at a rate of not less than $155.00 per week and not more than $250.00 per week. An employee who is paid more than $250.00 per week is evaluated under the short test. The Secretary's position, as set forth in the pretrial order, is that the short test includes the provisions of the long test by explicit reference and by incorporation. However, these tests have not been so read. In *Marshall v. Western Union Telegraph Co.*, 621 F.2d 1246 (3rd Cir.1980), the court held that "we read the Secretary's regulations as an expression of intent to keep the long and short test separate...." Before determin-

ing whether to apply the long or short test, the Court must first determine if the employees were bona fide administrative employees.

The defendant has the burden to prove that the staff accountants are exempt administrative employees under the Act. If the exemption exists for the defendant and the employees fall within the above guidelines, then neither recordkeeping of employees' hours worked nor the payment for overtime to those employees is required of the employer. *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959); *Walling v. General Industries*, 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947); *Usery v. Yates*, 565 F.2d 93 (6th Cir.1977). In considering a question of exemption from the application of the minimum wage and overtime laws under the Act, the Court is mindful that the Supreme Court has consistently and continuously held that such exemptions must be narrowly construed to effect the purposes of the Act. *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) (citing in footnote 13 *Powell v. United States Cartridge Co.*, 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017 (1950)); *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); *A.H. Phillips v. Walling*, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945). The exemptions must also be construed against the party asserting them. *Usery v. Yates*, 565 F.2d 93 (6th Cir.1977).

III.

Since the nonexempt status is a question of fact, the key to determining whether or not the employees titled "staff accountants," are exempt from the Act is to delve closely into their jobs. Pursuant to the regulations discussed above, their responsibilities, decision-making, duties and any other activities defined by the Act as being performed in an administrative capacity must be examined.

▮ Discretion or independent judgment and the duty to make recommendations are the most important elements in

determining whether a person's work is of an administrative character. In the face of actual work performed, little emphasis should be placed upon a job title, and a person's actual activities must substantiate the job title. There is a difference between one "who merely works around the place" [and] one who has something to say about "running the place." *Walling v. Newman,* 5 Wage and Hour Cases 436, 446 (S.D.N.Y. 1945). A staff accountant's job, in order to fall within the administrative exemption under the Act, must require the employee to have skills in auditing, selecting, rejecting, and checking items which go into the calculation of costs, all of which utilize the exercise of discretion and independent judgment. *Conary v. A.O.G. Corp.,* 10 Wage and Hour Cases 276, 277 (D.R.I.1951) and § 541.205(i)(2). For an exemption to exist, the employee must perform work requiring the exercise of discretion and independent judgment, thus, the employee must be a decision-maker. *Green v. Cherokee Motor Coach Co.,* 8 Wage and Hour Cases 277, 280 (E.D.Tenn.1948) and § 541.207(c)(1) and (d)(1)(2). In this case, the staff accountants' worked under the direct supervision of Ms. Swafford and Ms. Evins. When a problem arose, they paper-clipped it for review and final disposition of the problem.

The employee's duties in *Green v. Cherokee, Id.,* bear a close resemblance to the duties in the instant case. The plaintiff in *Green* was employed as a dispatcher and auditor of bus drivers' reports. His duties as dispatcher consisted of arranging for the departure of buses. He also sent out extra drivers and buses when needed for both regular runs and special trips. Among these duties included following both regular and specially prepared schedules. This is analogous to the staff accountants employed by NHC who tabulated numbers by merely following the prescribed steps set out in a manual. The plaintiff in *Green* did not make the schedule just as the staff accountants in the instant case did not prepare the formula for reviewing the books. In *Green,* the plaintiff spent about half of his time auditing drivers' reports. He checked the cash fares and tickets against the reports made by the bus drivers. The plaintiff in *Green* made no recommendation with respect to the working operations of the Cherokee Motor Coach Co. *Green* at 278. The staff accountants' duties are within the same realm of activity as that of *Green.* Both checked reports but exercised no independent judgment or discretion. Without the extra responsibilities of exercising discretion and independent judgment with respect to matters of significance, the employees are classified as bookkeepers, and their activities do not raise them to the level of an auditor. *See,* 29 C.F.R. §§ 541.-205(c)(2) and 541.207(e)(1). In *McComb v. New York and New Brunswick Auto Express Co.,* 95 F.Supp. 636 (D.N.J.1950), the court clearly and concisely concluded that employees who calculate and "audit" shipping rates are not "administrative" employees exempt from the Act under Section 13(a)(1). The employees in *McComb* arrived at their results by utilizing various compendia of information containing classifications, tariffs and other shipping information:

> The essence of his work required him to exercise no substantial discretion but simply, efficiently and accurately to ferrett out of the information provided for him in the way of source data that formed the basis for the charges made by the defendant for its work. This required a considerable degree of skill and proficiency but does not fall into the sphere of administrative capacity which takes him out of the purview of the Fair Labor Standards Act.

*McComb v. Auto Express Co.,* 95 F.Supp. at 642. An employee meets the administrative exemption only if his or her primary duty directly relates to the employer's management or general business policies. 29 C.F.R. § 541.206(a) (1984).

 The Court finds that the defendant failed to establish that the staff accountants were more than bookkeepers. More responsibility than the tabulation of data is necessary to classify an employee as exempt under the Act. The employees' activities must include analyses and conclusions

directly related to management policies such as production, costs, sales, et cetera, for the employees to be classified as exempt employees. NHC did not carry its burden by showing that the staff accountants exercised discretion and independence as set out in § 541.207. The fact that mistakes might appear in a nursing home's ledgers or that there might be apparent mistakes about which the staff accountant should make inquiry, is not a discretionary matter. Any ordinary bookkeeper would make inquiries about abnormalities in the ledgers. *Pezillo v. General Tel. & Electron. Inform. Sys., Inc.*, 572 F.2d 1189 (6th Cir.1978), affirming 414 F.Supp. 1257 (M.D. Tenn.1976); *Kincaid v. Tennessee Copper Company*, 10 Lab.Cas. (CCH) ¶ 62 911 (E.D.Tenn.1945). Since independent judgment and discretion is not exercised by the staff accountants, the short and long test salary requirements need not be addressed. Both independent judgment and the requisite salary must exist for exemption. 29 C.F.R. § 541.201(b)(2), *Brennan v. Southern Productions, Inc.*, 513 F.2d 740 (6th Cir.1975). The Court finds that the defendant's employees were not bona fide administrative employees.

### IV.

The Court therefore concludes that NHC violated Section 7 of the Act by failing to pay its staff accountants any overtime for the hours that they worked in excess of forty hours per week. The employees should have received one and one-half times their regular hourly rate for each hour worked in excess of forty. The Court finds NHC also violated Section 11 of the Act when it failed to make and preserve records of the hours worked by the staff accountants. The specific record-keeping requirements are at Part 516 of Title 29 of the Code of Federal Regulations. As stipulated, NHC does not deny it has failed to keep the records required by § 11(c) of Part 516. NHC contended that the staff accountants were exempt as administrative employees and therefore it believed no records were necessary.

The Secretary of Labor retains the burden of proof on the issue of the willfullness of the violations under 29 U.S.C. § 255(a) (1985) (Portal-to-Portal Act), the showing of which is a predicate for the three-year statute of limitations for the recovery of back wages. If the violation is not willful, the action must be commenced within two years of the violation.

Glenn Sellers, a compliance officer with the Wage-Hour Division of the Department of Labor, testified that some of the employees in the NHC system were paid flat salaries and no overtime for the excess of the forty hours worked by these employees. His testimony was based on an investigation he conducted in August 1981 of Knoxville Health Care Center and Knoxville Convalescent and Nursing Home. Sellers testified that 10 to 15 LPNs were paid flat salaries even when they worked overtime. Other employees in the NHC system who were not paid overtime included: bookkeepers, assistant bookkeepers, medical record clerks, and maintenance workers. Mr. Sellers testified that there was no question about whether these employees were exempt because of either the routine or manual nature of the duties they performed. When they did work overtime, no overtime was paid but the overtime was "banked." When an employee worked less than forty hours, he or she was paid out of the "banked" time on the basis of straight time.

Mr. William Rucinski, a compliance officer with the Wage and Hour Division of the Department of Labor, also testified that he had previously conducted an investigation of NHC which was initiated in April 1981 because of a complaint received in the Wage and Hour Office in Nashville. Mr. Rucinski testified he initially met with Mr. Keathley. During his investigation, Mr. Rucinski found violations of the overtime requirements of the Act. He found NHC was maintaining two sets of time cards on a group of hourly employees. One set showed the actual hours worked each week and the second set showed the employees worked forty hours each week. The first set, with the actual hours worked, was kept in the supervisor's desk and the second set, showing only forty hours

worked, was sent to the payroll department. A conference between Mr. Rucinski and Mr. Keathley, NHC's Corporate Director of Personnel, was held and Mr. Rucinski disclosed his findings. Another meeting was held between Mr. Rucinski, Mr. Keathley, Mr. Burgess, Vice President of NHC, and Mr. La Roche, Secretary and General Counsel of NHC. Mr. Burgess admitted that a second set of falsified time cards had been maintained. These two previous investigations, both of which occurred before this action was commenced, lead the Court to conclude that NHC was familiar with the Act and that NHC knew its conduct was governed by the Act.

■ While good faith [7] is a defense to liability under Section 10 of the Portal-to-Portal Act, which imposes liability for failure to pay minimum wages or overtime compensation under the FLSA, it is irrelevant to the issue of "willfulness" which is the key to the extent of liability:

> [A]n employer acts willfully and subjects himself to the three year liability provision if he knows or has reason to know that his conduct is governed by the Act. Neither a good faith belief in the lawfulness of his wage and overtime regulations nor ignorance of their invalidity shields the employer from the additional year of liability.

*Conklin v. Joseph C. Hofgesang Sand Co.,* 407 F.Supp. 1090 (W.D.Ky.1975), remanded on other grounds, 565 F.2d 405 (6th Cir. 1977).

■ The defendant has admitted that it did not keep accurate records of the hours worked by its employees. It has violated the Act in the past with respect to payment of wages. The Court finds, in light of NHC's past practice of knowingly maintaining inaccurate and falsified time records of hours worked by its employees, that the violations of the Act at issue were willful. Since the defendant's violations were willful, the applicable statute of limitations for this action is three years. 29 U.S.C. § 255(a) (1985).

The filing of the original complaint tolled the running of the three-year statute of limitations under 29 U.S.C. § 216(b) (1976). *Bush v. State Industries, Inc.,* 599 F.2d 780, 787 (6th Cir.1979). For the purpose of the employees' overtime pay, a separate cause of action occurred at each regular pay day immediately following the work period where the staff accountants worked overtime and were not paid one and one-half times their regular pay for the additional hours worked over forty hours each week. Since the three-year statute of limitations is applicable, the staff accountants' claims are barred insofar as the claims that occurred more than three years before the initial complaint was filed. 29 U.S.C. § 255(e) (1985). *Vandenhout v. Manchester Plastics, Inc.,* 538 F.Supp. 401, 402 (E.D.Mich.1982).

The Court concludes that the staff accountants are entitled to compensation for all the overtime worked at a rate of one and one-half their regular hourly rate for the period beginning August 11, 1980, and ending on August 11, 1983 (filing of the complaint).

■ The Secretary of Labor contends he is entitled to liquidated damages. The Court agrees that NHC failed to carry its burden of showing that these violations were reasonable and in good faith. Section 216 of Title 29 provides that an employer who violates the FLSA is liable for the unpaid overtime compensation "and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (1976). This Court notes that even if an employer does introduce evidence supporting a "good faith and reasonable belief" defense, the trial court may still, in its discretion, award liquidated damages. *McClanahan v. Mathews,* 440 F.2d 320 (6th Cir.1971). The Court concludes that the Secretary is entitled to three years of back wages and an equal amount of liquidated damages.

The Secretary of Labor retains the burden by reasonable inference of showing the amount of back wages due the staff accountants. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90

---

7. *See* 29 U.S.C. § 259.

L.Ed. 1515 (1946), *reh'g denied* 329 U.S. 822, 67 S.Ct. 25, 91 L.Ed. 699 (1946). Accordingly, this matter will be referred to the Magistrate for a determination of the amount of back wages due.

An appropriate order will be entered.